IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 8, 2005

## ALFIO ORLANDO LEWIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2000-A-121     Cheryl Blackburn, Judge**

_____

**No. M2004-01282-CCA-R3-PC - Filed March 16, 2005**

_____

The petitioner, Alfio Orlando Lewis, appeals as of right from the dismissal of his petition for post-conviction relief by the Davidson County Criminal Court. He seeks relief from his convictions for two counts of attempted second degree murder and consecutive twelve-year sentences. The petitioner contends that he received the ineffective assistance of counsel at his trial and that his sentences are invalid under <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004). We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. C. MCLIN, JJ., joined.

David M. Hopkins, Nashville, Tennessee, for the appellant, Alfio Orlando Lews.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The following facts which led to the petitioner's convictions are taken from this court's opinion in the direct appeal from his convictions: The petitioner fired his pistol at two brothers, the owners of the South Side Market and Deli, as they left their store on Murfreesboro Road in Nashville, Tennessee. Earlier that evening, the petitioner entered the store and purchased a frozen pizza. When one of the brothers refused the petitioner permission to use the microwave to heat the pizza, the petitioner became angry. A spirited argument followed during which the petitioner threatened to return, shoot the brothers, and blow the place up. When the brothers closed the store and got into their car to go home, the petitioner and a man with a shotgun approached their car and began firing at them. The brothers were also armed and returned fire. The petitioner and his companion fled, but the brothers recognized the petitioner. They called the police, described the

petitioner, and provided the police with the store surveillance video showing the petitioner in the store earlier that day.

At trial, the petitioner admitted that he argued with one of the brothers but testified that he was with his mother, his girlfriend, and his cousin on the evening of the shooting. The petitioner's girlfriend and mother also testified the petitioner was with them during the shooting. The jury convicted the petitioner of two counts of attempted second degree murder and two counts of aggravated assault. Following a sentencing hearing, the trial court merged the aggravated assault convictions into the attempted second degree murder convictions and imposed sentences of twelve years as a Range I, standard offender for each conviction, to be served consecutively for an effective sentence of twenty-four years. The petitioner appealed, and this court affirmed his convictions and sentences. State v. Alfio Orlando Lewis, No. M2000-03160-MR3-CD, Davidson County (Tenn. Crim. App. March 6, 2002), app. denied (Tenn. Sept. 16, 2002).

The petitioner filed a petition for post-conviction relief alleging that his counsel rendered ineffective assistance by failing to investigate his case adequately, to communicate with him during the trial, and to present certain witnesses. At the post-conviction hearing, the petitioner testified that the attorney who represented him at trial was appointed approximately ten months before trial and that he was the second attorney appointed to represent him in the case. He said that he met with his attorney two or three times before trial and that during those meetings, they did not review the facts of his case, the evidence against him, or the materials received through discovery. He said that he knew the surveillance videotape might be used as evidence against him at the trial but that he never watched the videotape. He said he gave his attorney the names of three witnesses who could testify in his behalf: Anthony Hart, Floyd Robinson and Shea Brown. He said these witnesses told him they had information beneficial to his case. He said that these witnesses could have cleared his name but that his attorney did not subpoena any of them. He said that he had spoken to Mr. Hart who was willing to come to court on the petitioner's behalf but that Mr. Hart's location was unknown at that time. He said Mr. Hart would have admitted committing the offenses in issue.

The petitioner said he attempted at his trial to tell the jury what Mr. Hart had told him, but the information was ruled inadmissible as hearsay. When asked what made him decide to testify at his trial, the petitioner responded that his attorney instructed him to take the stand. He said they never met before the trial to prepare his testimony or even discuss whether he would testify. He said that he asked his attorney whether the state would offer a settlement and that his attorney told him it would make no difference because it was a lot of time. He said a plea bargain was never discussed. He admitted that he told his attorney he was innocent and that he wanted the truth to be out. He said his attorney did not inform him what type of punishment he might receive or what consequences he faced going to trial. He said the only advice he received was to go to trial.

On cross-examination, the petitioner said that he learned the facts relevant to his case from the discovery materials and that his trial attorney told him nothing. He said he received the discovery materials from his first attorney, who asked to be removed from the case because he and the petitioner did not get along. He admitted that he was not surprised by any of the evidence presented

at trial and that he was primarily concerned with seeing the videotape. He said he gave his attorney the names of the three witnesses when they met and told him Mr. Hart would "step up and take this charge" and clear his name. He said Mr. Robinson told him that he had the shotgun, that Mr. Brown had the automatic weapon, and that Mr. Hart observed the incident from across the street. The petitioner conceded that he was unable to give his attorney exact addresses for the three witnesses and that he could only give him a general area to search for them.

At the conclusion of the petitioner's testimony, the petitioner's attorney informed the trial court that he had issued a subpoena for Mr. Hart who had since been paroled and that he believed Mr. Hart was living in Nashville. The trial court granted the petitioner a continuance to locate Mr. Hart and heard the testimony of the petitioner's attorney.

The petitioner's trial attorney testified he had practiced law as a criminal defense attorney since 1986 or 1987. He said that he met with the petitioner at the courthouse and at the Justice Center a couple of times, that he discussed the case with the petitioner, and that the petitioner was not interested in negotiating a settlement or pleading guilty. He said he mentioned the idea of a plea agreement only one time because the petitioner was adamant about his innocence and told him that he would not plead guilty to something he did not do. He said the petitioner was confident the testimony of his alibi witnesses would help his case. He said he spoke with the alibi witnesses, and they corroborated the petitioner's testimony. He stated that he told the petitioner what was on the videotape but that the petitioner was unable to view the videotape because the rules prohibited taking videotapes inside the Justice Center. He said he discussed the petitioner's testimony with him before trial. With regard to Mr. Hart's confessing that he was involved in the crime, the attorney testified that he did not receive this information from the petitioner until after the trial began and that the petitioner did not know Mr. Hart's whereabouts. He said the petitioner had given Mr. Hart's name only to his previous attorney. He said he asked a private investigator to assist him in locating Mr. Hart to no avail. He did not recall being advised of the other two witnesses, Mr. Robinson and Mr. Brown. However, he admitted he read a letter in the discovery materials sent by the petitioner to the victims which mentioned the names of the three witnesses who could allegedly attest to the petitioner's innocence. He said the petitioner was unable to give him the location of the witnesses, other than they could be found "in the neighborhood." He stated that according to the petitioner, Mr. Hart observed Mr. Robinson and Mr. Brown commit the crime from across the street and that Mr. Robinson's and Mr. Brown's alleged involvement in the crime was based solely on information furnished the petitioner by Mr. Hart, not Mr. Brown or Mr. Robinson.

On cross-examination, the attorney testified he did not recall the number of times he met with the petitioner before trial. When asked whether he and the petitioner reviewed his trial testimony, he said that the petitioner had told him what his testimony would be on numerous occasions and that it was unwise in his opinion to rehearse. He said his advice to the petitioner was to get on the stand and tell the truth. He did not recall reviewing the discovery materials with the petitioner. He said the petitioner had a good grasp of the discovery materials and was aware of the charges he faced. He said that they discussed the alibi defense strategy and that their success at trial depended on whom the jury believed.

-3-

When the petitioner's attorney concluded his testimony, the trial court granted the petitioner a three-week continuance to locate Mr. Hart. At the next hearing, the petitioner's attorney informed the trial court that Mr. Hart could not be found. The petitioner rested his case on the petition and the proof presented at the first hearing.

In denying the petitioner relief, the trial court found the petitioner failed to demonstrate by clear and convincing evidence that his trial attorney failed to communicate adequately with him. It noted that the petitioner was knowledgeable of his case and found that the petitioner's attorney discussed with the petitioner both the case and the state's evidence. With regard to the attorney's alleged failure to investigate, the trial court credited the testimony of the attorney and found that he attempted to locate the petitioner's witnesses but was unable to do so. The trial court also concluded that the petitioner's attorney was not ineffective for such failure and that the petitioner failed to demonstrate prejudice. As for the attorney's failure to call certain witnesses, the trial court observed that the petitioner failed to show through the witnesses' testimony what evidence would have been presented if they had testified.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, the petitioner contends that he received the ineffective assistance of counsel because his trial attorney failed to investigate adequately the facts in his case, failed to locate and interview witnesses who could have testified favorably in his defense, and failed to advise the petitioner of the nature of the charges and evidence against him. The state contends the petitioner failed to prove by clear and convincing evidence that his attorney was deficient or that he was prejudiced by the alleged deficiency. We agree with the state.

The burden was on the petitioner in the trial court to prove by clear and convincing evidence the factual allegations that would entitle him to relief. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Because the trial court's conclusions regarding the effectiveness of counsel involve mixed questions of law and fact, our review is de novo with no presumption of correctness.

When a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See id.; United States v. DeCoster, 487 F.2d 1197, 1201 (D.C. Cir. 1973).

The petitioner bases his claim of inadequate investigation primarily on the failure of his attorney to locate and interview certain witnesses that he wanted to testify at his trial. The petitioner's trial attorney testified, however, that he received the information concerning Mr. Hart late in the trial proceedings and that the information was incomplete. Nevertheless, the attorney tried to locate Mr. Hart with the assistance of a private investigator. Their efforts proved unsuccessful, but neither the investigator nor the attorney had much information with which to work. The petitioner admitted that he was unable to provide an address or any other specific information regarding Mr. Hart or the other two witnesses he wanted his attorney to locate. Although the attorney testified the names of the three witnesses were provided in the discovery materials before trial, he said he was unaware of the importance of Mr. Hart's testimony until after the trial had started. In any event, the petitioner failed to present testimony from any of the three witnesses to show what evidence would have been presented if they had testified. When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. This is the only way the petitioner can establish that a material witness existed and could have been discovered, that a known witness was not interviewed, that the failure to interview a witness caused prejudice, or that the failure to have a known witness present or to call the witness to the stand resulted in the denial of critical evidence which prejudiced the petitioner's case. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial judge nor an appellate court can speculate as to whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. Id.

Regarding the petitioner's claim that his attorney failed to advise him of the nature of the charges and the evidence against him, the trial court found that the petitioner was knowledgeable of the facts of his case and that the petitioner's attorney discussed with the petitioner his case as well as the state's evidence against him. The petitioner admitted that he received the discovery materials before his trial attorney was appointed, well in advance of trial, and that he read them. The attorney testified the petitioner had a good grasp of the discovery materials and knew the charges against him. As a result, the attorney admitted he did not review the discovery materials with the petitioner. The petitioner argues that his attorney failed to show him the videotape, but the petitioner's attorney testified that the rules of the Justice Center forbade this practice. The petitioner claims that he was interested in a plea bargain, but his attorney testified that the petitioner was adamant about his innocence and refused to consider a guilty plea. The trial court accredited the attorney's testimony in all respects.

The record does not preponderate against the trial court's findings. The petitioner failed to prove his allegations by clear and convincing evidence. We conclude the petitioner did not receive the ineffective assistance of counsel.

## II.  SENTENCING

The petitioner contends that his sentences are invalid under <u>Blakely v. Washington</u>, 542 U.S. ___, 124 S. Ct. 2531 (2004).  He argues the trial court violated <u>Blakely</u> by imposing his sentences based on facts which were not reflected in the jury verdict or admitted by the petitioner.  The petitioner urges this court to notice the error under Rule 52(b), Tenn. R. Crim. P.  The state contends that the petitioner has waived these issues for failure to raise them on direct appeal and in the petition for post-conviction relief.

The Post-Conviction Procedure Act states, "A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." T.C.A. § 40-30-106(g).  It also states that appeals from the dismissal of a petition for post-conviction relief are to be governed by the rules of appellate procedure.  T.C.A. § 40-30-116.  The advisory commission comments to Rule 36(a), T.R.A.P., state that it is an "accepted principle that a party is not entitled to relief if the party invited error, waived an error, or failed to take whatever steps were reasonably available to cure an error." The petitioner did not raise sentencing issues on direct appeal or in his petition for post-conviction relief.  Rather, he requests this court to grant relief based upon a finding of plain error under Rule 52(b), Tenn. R. Crim. P.

The plain error doctrine has no application in post-conviction relief proceedings. Tennessee Supreme Court Rule 28 addresses applicable procedures and remedies with regard to Tennessee's Post-Conviction Procedure Act, T.C.A. §§ 40-30-101 through 40-30-313.  Section 3(B) of Rule 28 states, "Neither the Tennessee Rules of Civil Procedure nor the Tennessee Rules of Criminal Procedure apply to post-conviction proceedings except as specifically provided by these rules." <u>See</u> <u>State v. West</u>, 19 S.W.3d 753, 756 (Tenn. 2000) (concluding that plain error under Rule 52(b), Tenn. R. Crim. P., does not apply to post-conviction cases).

We also note that although the United States Supreme Court has not yet addressed the retroactive application of <u>Blakely</u>, it has held that <u>Ring v. Arizona</u>, 536 U.S. 584, 122 S. Ct. 2428 (2002), which required that a jury, not a trial judge, find the existence of aggravators necessary to impose the death penalty, was not a watershed rule of criminal procedure and therefore did not apply retroactively to cases already final on direct review.  <u>Schriro v. Summerlin</u>, __ U.S. __, 124 S. Ct. 2519, 2526 (2004).  Based on <u>Summerlin</u>, this court has concluded that <u>Blakely</u> does not apply retroactively to collateral attacks for prior convictions and sentences.  <u>See</u> <u>Donald Branch v. State</u>, No. W2003-03042-CCA-R3-PC, Shelby County (Tenn. Crim. App. Dec. 21, 2004).  We agree that <u>Blakely</u> does not apply in this post-conviction proceeding collaterally attacking the petitioner's sentences.

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____

JOSEPH M. TIPTON, JUDGE